## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**MICHAEL TODD COOKE,**

      **Plaintiff,**

**vs.**                   **Case No.: 4:22-cv-00330-MW-MAF**

**DEBORAH JONES, ET AL.,**

      **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff, Michael Todd Cooke, a prisoner proceeding *pro se*, initiated this civil rights action pursuant to 42 U.S.C. § 1983. ECF No. 1. Plaintiff's Second Amended Complaint is the operative complaint. ECF No. 27. Defendants filed a motion to dismiss. ECF No. 44. Plaintiff did not file a Response in opposition to Defendants' motion; and the time allotted to do so has expired. Accordingly, this case is ripe for review. After careful consideration, for the reasons stated below, Defendants' motion to dismiss should be granted; and the case should be closed.

## I.   Allegations of the Second Amended Complaint, ECF No. 27.

Plaintiff sued three prison officials, in their individual capacities: (1) Deborah Jones, assistant warden of programs; (2) Harold Hunt, classification officer; and (3) Michael Raines, classification supervisor. ECF

No. 27, pp. 1-3. Plaintiff alleges Defendants failed to protect him from an inmate attack at Century Correctional Institution (Century), in violation of the Eighth Amendment.

A. Background

Plaintiff had at least nine or ten protections requests on file by the time he transferred to Century.[1] Plaintiff claims that, at other prisons, he was the victim of battery, assault, extortion, and rape. Id., p. 4. Before arriving at Century, Plaintiff was housed at Franklin Correctional Institution (Franklin). Id., p. 3. In June 2022, gang members forced Plaintiff to smuggle tobacco and narcotics into Franklin. Id. Plaintiff believes inmates targeted him because he is transgender, small in stature, and cannot defend himself. Id.

Plaintiff sought protection at Franklin; and, when it was awarded, Plaintiff provided prison officials with "credible" and "substantial" details about the prison smuggling operation, which included information about a fellow inmate, Keiaumbre Xavier Thomas, a member of the Gangster Disciples. Id., pp. 3-4. On July 18, 2022, Plaintiff received a "resolve

---

[1] Plaintiff is serving a fifteen-year sentence for firearms- and drug related offenses. See Florida Department of Corrections, Corrections Offender Network at the following URL: https://fdc.myflorida.com/offenderSearch/detail.aspx?Page=Detail&DCNumber=E34011&TypeSearch=AI. Accessed: 4/18/2024.

protection transfer" to Century. Id., p. 4. Plaintiff learned Inmate Thomas was also housed at Century based on a "negative transfer." Id., p. 4.

B. Plaintiff's Incarceration at Century.

The day Plaintiff arrived at Century, he spoke to classification officer, Defendant Hunt, about the reasons for the protective transfer and expressed a fear of getting an "outside work" assignment that would make him vulnerable to another smuggling operation. Id. Hunt verified Plaintiff's history and questioned why Plaintiff was not assigned to a "Protective Management Unit." Id. Plaintiff explained the transfers were just from one institution to another, but the victimization continued. Id. Hunt submitted a request so Plaintiff would not have outside work assignments. Id., p. 5.

On the second day, Plaintiff saw Inmate Thomas at the prison cafeteria. Id. Thomas was "standoffish and short" and told Plaintiff he no longer had possession of his cell phone. Id. This suggested to Plaintiff that Thomas "probably knew or thought" Plaintiff "snitched on him" at Franklin. Id.

By the fourth day, on July 22, 2022, Plaintiff was moved from "B-1 to B-2," where Thomas was housed. Id., p. 5. Thomas and "his gang brothers" followed Plaintiff around the dorm and harassed him. Id. The next day, Plaintiff engaged in sexual activity with an unnamed inmate, which he claims

was out of fear and for protection.[2] Id. Plaintiff provides no details about the alleged harassment or why he needed the protection of a fellow inmate at Century. Plaintiff called his grandmother and asked her to call the prison to obtain protection for Plaintiff. Id. Immediately, prison officials placed Plaintiff in administrative confinement for protection. Id., p. 6.

## C. Plaintiff's First Institutional Classification Team (ICT) Hearing

On August 19, 2024, Plaintiff had his first ICT hearing at Century. Id. Defendant Jones, Defendant Raines, and Colonel Hassett were present. Id. Plaintiff did not name Hassett as a defendant in this case. Prior to the hearing, Plaintiff provided a detailed, written witness statement explaining the issues at Franklin and a need for protection at Century. Id. Plaintiff's description of the hearing is somewhat contradictory. First, Plaintiff claims that "nothing . . . on [the] witness statement was mentioned or fact checked" at the hearing. Id. Then, Plaintiff claims he was able to make a "brief" verbal statement about "a real threat against [Plaintiff's] life and safety." Id., p. 13. Plaintiff provides no facts showing he reported any *specific* or ongoing threat at Century.

---

[2] Plaintiff filed a complaint under the Prison Rape Elimination Act (PREA) a few weeks later, on August 18, 2022. ECF No. 27, p. 8.

Allegedly, at the hearing, Jones was hostile, berated Plaintiff, and accused Plaintiff of extorting his grandmother and planning to smuggle contraband into the prison with her help. Id. Jones also told Plaintiff the reason Plaintiff needed protection was his own "fault" because he "owed money for drugs." Id. Plaintiff attempted to explain the issues at Franklin, but Jones "exploded into a fury of abusive and offens[ive] language." Id., p. 7. When Plaintiff alleged his victimization was related to being transgender, Jones insisted Plaintiff was "not transgender" but was "a man" and a "sorry f[—]king one at that." Id. Jones told Plaintiff:

> You don't get a free ride out of Century, the only way you leave here, is on a life-flight . . . or in a body bag and personally I could give a sh[—l]ess. All we do is tag 'em and bag 'em . . . you have to get injured to get away from here.

Id. Jones stated Plaintiff would not receive "any protection" and recommended "Close Management" (CM) placement as punishment for seeking protection. Id.

A few days later, on August 22, 2024, the state classification department denied Plaintiff's protection request.[3] Id. On August 25, Hunt served Plaintiff with the ICT's recommendation for CM placement. Id., p. 8.

---

[3] Plaintiff claims he appealed the decisions and filed grievances. The grievance process is not at issue in this case; therefore, it is not outlined in this Report.

When Plaintiff asked Hunt "how he could recommend . . . CM, when he knew about [Plaintiff's] past and had actually helped [Plaintiff]," Hunt responded he "was only doing" the "dirty work" for Raines and Jones. Id., p. 8. Hunt served Plaintiff with a "second, rewritten" CM recommendation on September 8, because the first was insufficient. Id.

D. Plaintiff's Second ICT Hearing

Plaintiff had a second ICT hearing on September 23, 2022; Major McCabe, Defendant Jones, and Defendant Raines were present. Id., p. 8. Like Hassett, McCabe is not named as a defendant. Plaintiff repeated he faced "real threat[]s . . . against [his] life" as an informant. Id., pp. 8-9. Again, Plaintiff does not articulate any specific or ongoing threat. Jones "[did not] believe" Plaintiff, accused Plaintiff of "manipulating the system," and read Plaintiff's outgoing mail calling her "Ghetto" and other staff "hillbill[ies]." Id., p. 9. Plaintiff claims Jones and Raines "ignored [Plaintiff's] pleas for help" and again recommended CM; Plaintiff appealed. Id., p. 9.

E. The Inmate Attack

The day after the second ICT hearing, on September 24, 2022, Plaintiff was "escorted back from the inmate showers" to his cell between 6:00 p.m. and 9:00 p.m. Id., p. 9. Plaintiff's hands were cuffed behind him. Id. Right in front of Plaintiff's cell door, Inmate Jordan Pittman slipped out of his

handcuffs, ran up behind Plaintiff, and cut Plaintiff across the face, throat, and behind the neck with a blade. Id. Officers subdued and restrained Pittman. Id. Plaintiff claims he received medical attention but was permanently disfigured. Id. Plaintiff filed a "DC6-236" with Inspector Martin seeking to "press charges" against Pittman Id., p. 10. The matter was sent to the Chief of Security. Id. Plaintiff also supplemented his pending appeal based on Pittman's attack and, again, asked for protection. Id., p. 10. The appeal was returned "without action." Id.

F. Plaintiff's Third ICT Hearing and Transfer.

On October 14, 2022, Plaintiff had a third ICT hearing. Jones was not present, but Raines and Colonel Hasset were. Id., pp. 10-11. Plaintiff provides no details about the third hearing but states that a "Resolve Protection Transfer" was granted; and, ultimately, the prison transferred Plaintiff to Holmes Correctional Institution (Holmes) in November 2022. Id., p. 11. While at Holmes, a similar course of intimidation and violence ensued against Plaintiff. However, those facts are not included in this Report because they do not involve the defendants and occurred at a different institution altogether.

G. Relief Requested

Plaintiff seeks $100,000 in compensatory damages from each

defendant for his "permanent[] disfigure[ment]" and pain and suffering. Id., p. 22. Plaintiff also seeks $100,000 in punitive damages from each defendant for "reckless and callous indifference to [his] rights." Id.

## II.   Standard of Review

The issue on whether a complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted is whether the plaintiff has alleged enough plausible facts to support the claim stated. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556; see also Wilborn v. Jones, 761 F. App'x 908, 910 (11th Cir. 2019). "The plausibility standard" is not the same as a "probability requirement," and "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 677 (quoting Twombly, 550 U.S. at 556). A complaint that "pleads facts that are 'merely consistent with' a defendant's liability," falls "short of the line between possibility and

plausibility." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

The pleading standard is not heightened, but flexible, in line with Fed. R. Civ. P. 8 to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests. Swierkiewicz v. Sorema, 534 U.S. 506 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions."). *Pro se* complaints are held to less stringent standards than those drafted by an attorney. Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Nevertheless, a complaint must provide sufficient notice of the claim and the grounds upon which it rests so that a "largely groundless claim" does not proceed through discovery and "take up the time of a number of other people." Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005) (quoted in Twombly, 550 U.S. at 558).

One additional principle warrants highlighting:  a motion to dismiss does not test the truth of a complaint's factual allegations. As noted above, factual allegations, though not legal conclusions, must be "accepted as true," Ashcroft, 556 U.S. at 678 even when they are "doubtful in fact." Twombly, 550 U.S. at 555. "Instead, it remains true, after Twombly and Iqbal as before, that 'federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later.'"

Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168-69 (1993) (quoted in Yawn v. Sec'y of Dep't of Corr., No. 5:13-cv-228-RH/EMT, 2017 U.S. Dist. LEXIS 96642, 2017 WL 2691423, at *1 (N.D. Fla. June 21, 2017)).

### III.    Defendant's Motion to Dismiss, ECF No. 44.

Defendants argue that the case should be dismissed because Plaintiff fails to state a claim. ECF No. 44. Plaintiff attempts to show "subjective knowledge of a risk of serious harm" by equating Defendants' knowledge of his previous requests for protection to knowledge of an ongoing risk of serious harm, but that is insufficient to state a constitutional claim. Id., pp. 8, 11. Plaintiff's request for protection based on his "informant status" alone is inadequate to put Defendants on notice that he faced a risk of serious harm. Id. Plaintiff did not offer enough details about a threat, in his complaint or to Defendants, to conclude there was a "strong likelihood" of injury, not a "mere possibility." Id., p. 9.

Plaintiff did not ask for protection from Inmate Thomas, Thomas' "gang brothers," or any other inmate at Century. Id. The attack by Inmate Pittman was unrelated. Id. Defendant Hunt's actions demonstrate that he did what he could to alleviate any risk including notifying prison staff about Plaintiff's fear of outside work assignments. Id., p. 10. Hunt took reasonable actions. Id.,

p. 11. There are no facts alleging Hunt was present for the attack, cooperated or instigated the attack, or should have known of the attack. Id., pp. 10-11. Moreover, the attack itself cannot be used as evidence Defendants knew of a substantial risk of harm. Id., p. 12 relying on Brooks v. Warden, 800 F.3d 1295, 1301 (11th Cir. 2015). Specific to Defendant Jones, verbal threats and taunts do not rise to the level of a constitutional violation. Id., p. 13 citing Edwards v. Gilbert, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989).

Plaintiff's complaint alleges he expressed verbally and in a written statement there was "a real threat against my life and safety," but Plaintiff failed to allege any facts that support an inference that the threat was ongoing at Century and protective custody was necessary. Id., p. 13. Plaintiff did not allege that Pittman was in any gang Plaintiff feared, that Pittman knew Plaintiff was an informant, or any other fact that shows a relationship between the denial of protective management status and the subsequent attack. Id., p. 16. Plaintiff's connection between the two is merely speculative. Id.

Even assuming Plaintiff did provide sufficient information to Defendants about an ongoing threat, he was provided with administrative confinement on the same day prison officials were noticed, had two ICT hearings, and placement in CM was recommended. Id., p. 14. Plaintiff did

not seek further protection until *after* the attack. A third ICT hearing was held and resulted in a resolve protection transfer. Id. Thus, Plaintiff cannot show that Defendants acted unreasonably; there was no causal connection between the attack and Defendants' actions. Id.

Defendants made the reasonable recommendation for CM based on the information available to them -- Plaintiff was removed from general population. Rule 33-601.800(2)(b)(2)(a), F.A.C., provides that inmates may be placed in CM when:

> an act or acts in the community during other periods of confinement, or any circumstances associated with the current period of incarceration such that safety and security concerns regarding the institution, the staff, or the public suggest further review of the inmate is necessary prior to placement in general population.

Id., p. 15. Plaintiff requested protective management, but he has no constitutional right to a specific security classification. Id. citing cases.

Because Plaintiff fails to state a constitutional claim, Defendants are necessarily entitled to qualified immunity. Id., pp. 17-19. Finally, under 18 U.S.C. § 3626(a)(1)(A), punitive damages are barred because they are "never necessary to correct a violation of a Federal right." Id., pp. 19-21. Defendants maintain Hoever v. Marks, 993 F.3d 1353, 1364 (11th Cir. 2021), is not controlling as to punitive damages because the Eleventh Circuit declined to consider whether Section 3626 bars punitive damages. Id., p. 21.

Punitive damages must be no greater that what is required to deter future violations. Id., p. 22.

Plaintiff did not file a response to Defendants' motion to dismiss, despite having sufficient opportunity to do so; and that time has now passed.[4] This indicates Plaintiff does not oppose the motion. "A party who opposes the motion must file a memorandum in opposition." N.D. Fla. Loc. R. 7.1(E).

## IV.   Discussion

### A.   Failure to Protect Claims

"The Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of the inmates." Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994) (alterations and internal marks omitted)). "Having incarcerated 'persons [with] demonstrated proclivit[ies] for antisocial criminal, and often violent, conduct,' having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." Farmer, 511 U.S. at 833 (citation omitted). Thus, it has long been recognized that "prison officials have a duty to protect

---

[4] Defendants filed their motion to dismiss on September 5, 2023. ECF No. 44. The Court granted Plaintiff several extensions of time to file a response to the motion to dismiss but he did not do so. ECF Nos. 46, 48, 50.

prisoners from violence at the hands of other prisoners." Id. (internal marks and alteration omitted). Still, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Id. at 834; see also Purcell v. Toombs Cty., 400 F.3d 1313, 1321 (11th Cir. 2005) ("[A] prison custodian is not the guarantor of a prisoner's safety.") (internal marks omitted).

A prison official violates the Eighth Amendment "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003) (internal marks omitted) (alterations adopted); see also Farmer, 511 U.S. at 828 ("A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."). Accordingly, to survive statutory screening on a failure to protect claim, a plaintiff must allege facts which demonstrate (1) a substantial risk of serious harm; (2) the defendant's deliberate indifference to that risk; and (3) a causal connection between the defendant's conduct and the Eighth Amendment violation. See Brooks v. Warden, 800 F.3d 1295, 1301 (11th Cir. 2015).

With regard to the second factor, deliberate indifference, "the defendant-official must be aware of specific facts from which an inference

could be drawn that a substantial risk of serious harm exists—and the prison official must also draw that inference." Johnston v. Crosby, 135 F. App'x 375, 377 (11th Cir. 2005). In other words, prison officials must possess enough details about a threat to enable them to conclude that the threat presents a "strong likelihood" of injury, not a "mere possibility." See, e.g., Brooks v. Warden, 800 F.3d 1295, 1301 (11th Cir. 2015); Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990). "The unfortunate reality is that 'threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm.'" Marbury v. Warden, 936 F.3d 1227, 1236 (11th Cir. 2019) (quoting Prater v. Dahm, 89 F.3d 538, 542 (8th Cir. 1996)).

In this case, Plaintiff's allegations do not state a failure to protect claim because he has not alleged any facts to show that he faced a substantial risk of serious harm. Plaintiff did not provide any details about a specific or ongoing threat while he was in administrative confinement or in any CM housing unit. By Plaintiff's own admission, Defendant Hunt ensured that Plaintiff did not receive an outside work assignment. Hunt's only other involvement was to deliver the ICT's CM recommendation to Plaintiff. This is insufficient to attribute any liability to Hunt.

Plaintiff does not attribute any facts to Defendant Raines other than Raines was a participant in the ICT hearings and did not do anything about Jones' behavior. ECF No. 27, pp. 18-19. Plaintiff merely states that Raines knew Plaintiff faced a substantial risk of serious harm because Plaintiff was an informant at Franklin. Id., p. 19. But articulating a general fear of harm based on being an informant at another prison does not show that Defendants could have -- or should have -- inferred there was a substantial risk to Plaintiff's safety. See Armstrong v. Price, 190 F. App'x 350, 353 (5th Cir. 2006) (finding that a prison official was not deliberately indifferent when a plaintiff presented "rather vague information" about threats). Plaintiff did not sue McCabe or Hassett even though they had the same role at the ICT hearing. But the mere fact that Raines was a member of the ICT, without more, is insufficient.

The threats Plaintiff expressed in his witness statement and at his hearing were related to the incidents at Franklin not Century. Plaintiff failed to allege any facts which would give Defendants subjective knowledge that Plaintiff faced a serious risk of harm. See Franklin v. Curry, 738 F.3d 1246, 1250 (11th Cir. 2013). Regardless, even assuming Plaintiff could show both a substantial risk of harm and subjective knowledge by Defendant, Plaintiff's

failure to protect claim would still fail because Plaintiff's allegations show that prison officials acted reasonably.

"[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 619-20 (11th Cir. 2007) (citing Farmer, 511 U.S. at 844). Accordingly, "prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." Id. (citing Farmer at 845). Based on Plaintiff's factual allegations, prison officials took reasonable steps to protect him. Plaintiff admitted he was placed in administrative confinement on his fifth day at Century, when his grandmother reached out to the prison on his behalf -- before Plaintiff had any discussions with Defendants about any perceived risk of harm. Plaintiff also remained in administrative confinement for approximately one month before he finally received a recommendation for placement in CM. Plaintiff's allegation that Jones "took no measures at all to abate" any risk of harm, is contradicted by his own admissions that he was ultimately placed on CM on September 23, 2022. Id., p. 15. Plaintiff was not sent back to general population. On the day of the attack, Plaintiff actually had an escort from the showers back to his

cell. ECF No. 27, p. 9. Plaintiff's attacker was then subdued and restrained. Id.

To the extent that Plaintiff claims that Jones' outbursts were "disrespectful and inappropriate," such claims are unsustainable. Derogatory, demeaning, profane, threatening, or abusive comments made by an officer to an inmate, no matter how repugnant or unprofessional, do not rise to the level of a constitutional violation. Edwards v. Gilbert, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989); see also McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) ("[A]cts . . . resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment.").

B. Plaintiff is Not Entitled to a Prison Transfer or a Specific Classification Status

Plaintiff's claim that Defendants' refusal to assign him a particular classification, housing status, or transfer equates to a constitutional violation necessarily fails. Protective management is "a special management status for the protection of inmates from other inmates in an environment as representative of that of the general population as is safely possible." Fla. Admin. Code r. 33-602.221(1)(j). Close Management (CM) is "the confinement of an inmate apart from the general population, for reasons of security or the order and effective management of the institution, where the

inmate, through his or her behavior, has demonstrated an inability to live in the general population without abusing the rights and privileges of others." Fla. Admin. Code r. 33-601.800. It is "the most restrictive single cell housing level of all the close management status designations." Fla. Admin. Code r. 33-601.800(2)(a)(1). It is "restrictive cell housing, which may or may not be restricted to single cell housing." Fla. Admin. Code r. 33-601.800(2)(b). Plaintiff presents no facts showing that either of these protective housing assignments was insufficient to protect him from any serious risk of harm.

It is well-settled that inmates do not have a constitutional right against being transferred to another institution, have no right to incarceration in a prison of their choice, and are not entitled to any prisoner- or status classification. Smith v. Crews, 738 F. App'x 981, 984 (11th Cir. 2018) citing Meachum v. Fano, 427 U.S. 215, 223-24 (1976); Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Moody v. Daggett, 429 U.S. 78, 88 (1976). Prison assignments are a function wholly within the discretion of prison authorities. Olim, 461 U.S. at 245. As long as the conditions or degree of confinement to which a prisoner is subjected are within the sentence imposed upon him and are not otherwise violative of the Constitution, prison officials have broad discretion to order the transfer of inmates. Montanye v. Haymes, 427 U.S. 236, 242 (1976). There is, simply, no constitutional entitlement to any

particular custody classification. <u>Moody</u>, 429 U.S. at 88; <u>see also</u> <u>Hewitt v. Helms</u>, 459 U.S. 460, 466 (1983) (no liberty interest in being confined in the general population rather than in the more restrictive atmosphere of administrative confinement). Prison classification systems are "remedies employed to eradicate abuses that were themselves unconstitutional. For example, when prison officials have failed to control or separate prisoners who endanger the physical safety of other prisoners, and the level of violence becomes so high as to constitute cruel and unusual punishment under the Eighth Amendment." <u>Jones v. Diamond</u>, 594 F.3d 997, 1015 (5th Cir. 1979). (no right exists under the due process clause to a system of prisoner classification).

C. <u>Qualified Immunity</u>

"Qualified immunity shields government officials from liability for civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right." <u>Hadley v. Gutierrez</u>, 526 F.3d 1324, 1329 (11th Cir. 2008) (citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)). The court considers: "whether the facts alleged show the officer's conduct violated a constitutional right," and (2) "whether the right was clearly established" at the time of the alleged transgression. <u>Pearson v. Callahan</u>, 555 U.S. 223, 232 (2009); <u>Keith v.</u>

Dekalb Cty., 749 F.3d 1034 (11th Cir. 2014). In short, Plaintiff must show that Defendants' failure to protect him from the attack violated his constitutionally protected right and the right was "clearly established" at the time.

Dismissal based on qualified immunity is proper "when the complaint fails to allege the violation of a clearly established constitutional right." St. George v. Pinellas Cty., 285 F.3d 1334, 1337 (11th Cir. 2002) (citing Chesser v. Sparks, 248 F.3d 1117, 1121 (11th Cir. 2001). While the Court is required to accept the allegations in the complaint as true, once a defendant raises a qualified immunity defense, the burden of persuasion belongs to the Plaintiff. Id. Plaintiff did not file any response.

For the reasons stated previously, Plaintiff's complaint fails to state any claim of a constitutional violation against Defendants. Therefore, the Defendants are entitled to qualified immunity. Id. Because Plaintiff fails to state a claim upon which relief may be granted, the Court need not address the issue of whether punitive damages would be appropriate in this case.

## V.   Conclusion and Recommendation

It is respectfully **RECOMMENDED** that Defendant's Motion to Dismiss for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2), ECF No. 44, be **GRANTED**. It is further recommended

that the Order adopting this Report and Recommendation direct the Clerk of Court to note on the docket that this case was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

IN CHAMBERS at Tallahassee, Florida, on April 22, 2024.

**/s/ Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. Rule 3-1; 28 U.S.C. § 636(b)(1)(C).